UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA,

               Plaintiff,                          14-cr-788 (NSR)–01

   -against-

                                              OPINION & ORDER

OMAR DIAZ PALMER,

               Defendant.

-----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

By motions dated September 8, 2015, defendant Omar Diaz Palmer ("Palmer" or "Defendant") seeks suppression of all evidence derived from, including statements made during, a motor vehicle stop and statements made post-arrest. Palmer also seeks an order compelling the government to comply with additional discovery requests. For the reasons that follow, the motions are DENIED.

## ALLEGED FACTS

Gleaned from the parties' submissions and the complaint that commenced this prosecution, the case involves the following. Beginning in spring of 2013, Task Force Officer Jose Pina ("Pina"), along with other agents and officers, conducted an investigation of alleged narcotics trafficking occurring at a barber shop on Gramatan Avenue in Mount Vernon, New York (the "barber shop"). (Compl. ¶5.) During the course of the investigation, Pina learned that narcotics were being sold at the barber shop. (*Id.*)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/23/2015

On September 9, 2014, Pina received information from a confidential informant ("CI") who was working under the direction of the DEA and has provided reliable information in the past. (*Id.* at ¶6.) The CI stated that "Pechuga" (later identified as Juan Carlos Paredes Martinez ("Martinez")) was at the barber shop and appeared to be waiting for an individual to engage in a narcotics transaction. (*Id.*) In response, Pina and other officers conducted surveillance at the barber shop. (*Id.* at ¶7.)

According to the complaint as well as an affidavit submitted by Defendant, sometime around 8:00 p.m., a black sports utility vehicle ("SUV") arrived with four individuals, one later identified as Defendant. (*Id.*) Thereafter, a known co-conspirator arrived and was greeted by both Martinez and Palmer. (*Id.* at ¶8.) Throughout the remainder of the time at the barber shop, Martinez walked in and out of the shop a number of times, at one point leaving with the co-conspirator and returning carrying a light colored plastic bag containing a rectangular object, which Pina determined was likely to be narcotics based on its packaging and shape. (*Id.* at ¶8-10; Defendant's Motion, Exhibit B, ¶¶7-8.) Martinez, Palmer, and three other individuals then left the barber shop in the SUV and were subsequently stopped by Pina and the Mount Vernon Police Department. Approximately six (6) police officers conducted the stop. (Compl. ¶9; Defendant's Motion, Exhibit B, ¶¶10-12.) A police officer asked Palmer for permission to search the vehicle, and Palmer allegedly consented.[1] (Compl. ¶10.) Pina and the police officers then asked the passengers to exit the vehicle, and the passengers complied. (*Id.*)

According to Pina, an officer proceeded to pat down one of the passengers, Cesar Fajardo Diaz ("Diaz"), and found the same bag and rectangular object observed earlier. (Compl. ¶¶8-10.)

---

[1] While this consent is a fact at issue in this motion, the affidavits submitted by Defendant do not address the consent or lack thereof.

At that point, all of the passengers, including Defendant, were placed under arrest. (*Id.* at ¶10; Defendant's Motion, Exhibit B, ¶15; Defendant's Motion, Exhibit C, ¶11.) The substance recovered from Diaz was later determined to be heroin. (Compl. ¶11.)

At some point during the stop, Eugenia Diaz Acevedo de Fajardo, a passenger in the vehicle, asked what was going on, and an officer replied that one of the passengers "has something illegal on him, and we'll tell you everything when we get to the police station."[2] (Defendant's Motion, Exhibit B, ¶14; Defendant's Motion, Exhibit C, ¶10.)

Once at the police station, the passengers were placed in separate rooms and interrogated. (Defendant's Motion, Exhibit B, ¶16; Defendant's Motion, Exhibit C, ¶12.) Defendant alleges that a law enforcement officer held him by the neck and pushed him against the wall, telling him "I'll make sure you'll do five years in jail, and your aunt and all of them will do five years in jail if you don't talk." (Defendant's Motion, Exhibit B, ¶19; Defendant's Motion, Exhibit C, ¶16.) Palmer signed a declaration of rights on September 10, 2014, after this alleged violence. (Defendant's Motion, Exhibit C, ¶18.)

On December 4, 2014, a federal grand jury indicted Palmer for possession of heroin in an amount exceeding 100 grams with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and (b)(1)(B).

## DISCUSSION

**A. Motion to Suppress & For a Suppression Hearing**

A defendant who moves to suppress is entitled to a hearing only if he submits "moving papers [that] are sufficiently definite, specific, detailed, and nonconjectural to enable the court to

---

[2] This is the only fact regarding the stop contained in the affidavits. The affidavits do not address the facts contained in the complaint, detailed above.

conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). The Second Circuit, and this Court, have long held that to meet this burden, a defendant must submit an affidavit from someone with personal knowledge of the facts. *See, e.g.*, *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) ("The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of [the affiant]."). The facts sworn to must be material, that is, they must "put the legality of the warrantless stop into contention." *United States v. Marquez*, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005) (citing *Gillette*, 383 F.2d at 848-49). Where a defendant's version of the events is not inconsistent with that stated in the complaint, the Court is free to assess the legality of the stop, search, or arrest without a hearing. *See Viscioso*, 711 F. Supp. at 745-46 (holding that where the defendant's version of the events was not inconsistent with that stated in the complaint, the facts were sufficient to conclude the arrest and the ensuing search were legal).

 1. *Suppression of Oral Statements Made in the Course of the Motor Vehicle Stop*

Defendant moves to suppress all oral statements made during the motor vehicle stop because his detention and the search of his person and vehicle were executed without probable cause or consent. Enclosed with his motion papers are two sworn affidavits memorializing the events of the arrest. In his motion, Defendant argues that oral statements made during the stop must be suppressed because (1) the search of the automobile was conducted without probable cause and without consent and (2) the detention of the Defendant prior to the search was the equivalent of an arrest and was without probable cause because the search had yet to be conducted. Defendant's motion fails to properly frame the issues before the Court. The questions the Court must answer are (1) was there reasonable suspicion sufficient to conduct a *Terry* stop,

4

and (2) was there probable cause for the arrest following the stop?[3] The Court answers both questions in the affirmative.

    *A. The Officers had Sufficient Reasonable Suspicion to Conduct a Terry Stop*

Under the long-established rule of *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may conduct an investigatory stop of a vehicle when they have "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (internal quotation marks omitted). An officer properly has reasonable suspicion when he or she is "aware of specific articulable facts, together with rational inferences from those facts that reasonably warrant suspicion." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).

In his motion, Defendant argues that, "[l]aw enforcement officers [] cannot seize or search an automobile without an articulable, individualized suspicion that an automobile contains weapons or contraband." (Defendant's Motion, p. 10.) Though Defendant correctly states the law, he does not raise any factual dispute as to reasonable suspicion. Because of the lack of contested material facts in the submitted affidavits, Defendant has not contradicted any of the Government's assertions to sufficiently require a hearing to assess the legality of the stop. *See Viscioso*, 711 F. Supp. at 745-46. Therefore, the Court will determine the legality of the stop based on the papers submitted.

The Government explains that the officers stopped the SUV based on a number of events

---

[3] Defendant's papers also make the incomplete argument that the time between the stop and the arrest should be considered a detention equivalent to an arrest, which lacked probable cause. Defendant's only factual assertion in support for this argument is that six (6) police officers conducted the stop. Beyond that, Defendant does not allege any other circumstances so intrusive as to be "tantamount to [an] arrest." *Florida v. Royer*, 460 U.S. 491, 496 (1983). In addition, it is uncontested that the period of time between the stop and the arrest was brief, and the law is clear that law enforcement officers "may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Hensley*, 469 U.S. 221, 226 (1985). *See also Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (recognizing detentions incident to authorized searches as reasonable).

set forth below. First, the officers received a tip from a CI that has provided reliable information in the past. In this instance, the CI relayed to Pina that Martinez was at the barber shop where he planned to engage in a narcotics transaction. The police officers, acting on a reliable tip, surveyed the barber shop where they witnessed persons and events corroborating the tip. The officers viewed both Martinez and Palmer greet the co-conspirator and later witnessed Martinez retrieve a small plastic bag with a rectangular object that, in their expertise and experience, the officers believed to be illegal narcotics. Palmer, Martinez, and three other individuals then left the barber shop in the SUV. The officers stopped the vehicle, at which point Palmer consented to a search.[4]

Defendant's affidavits largely confirm the story as told by the Government. Defendant does not provide any facts in his affidavits to dispute the tip. The affidavits explain that Acevado de Fajardo saw Martinez leave the barber shop and return carrying a bag; that the defendant and passengers all left the barber shop in Palmer's SUV; and that the vehicle was quickly stopped by approximately six (6) police officers.

The facts as stated before this Court readily demonstrate reasonable suspicion to warrant the stop. Martinez and Palmer both left the barber shop in the SUV, so it would not be irrational to infer that the contraband was also in the vehicle. Thus, in the absence of any contested facts provided by the Defendant, the confidential informant's tip combined with Pina's witnessing acts to corroborate the tip are sufficient to establish reasonable suspicion.[5]

---

[4] Though Defendant's motion claims he did not consent to a search, the affidavits do not set forth any facts to support this assertion. Attorney allegations cannot provide the Court with a basis for making a finding of fact. *See Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003) (stating that a memorandum of law "is not evidence at all"). The Court therefore cannot find that a dispute as to consent exists.

[5] In *Draper v. United States*, 358 U.S. 307 (1959), the Supreme Court faced a very similar situation and held that information from a reliable informant, corroborated by the agents' observations as to the accuracy of the informant's

### B. *The Officers had Probable Cause for the Arrest Following the Stop*

Probable cause exists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162 (1925).

In addition to the facts asserted to support reasonable suspicion, the Government explains that once the officers stopped the vehicle, Detective Pina asked the defendant and passengers to get out of the vehicle; found the package previously obtained by Martinez on the person of Diaz; and subsequently arrested the defendant. Again, Defendant's affidavits do not contradict this story. In fact, Defendant does not provide any facts at all that could create a dispute as to his removal from the vehicle,[6] the search of his co-defendant, or the timing of his arrest. The Court will therefore proceed on the papers, as a hearing is unnecessary where no factual dispute exists.

The Court finds that the Defendants interactions with the co-conspirator and Martinez at the barber shop, combined with his presence in the SUV with the passenger from whom the heroin was eventually recovered, are sufficient to establish probable cause. "The Supreme Court has said that it is reasonable to believe that a car passenger ... will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *U.S. v. Delossantos*, 536 F.3d 155, 160 (2d Cir. 2008) (citing *Wyoming v.*

---

description of the accused and of his presence at a particular place, was sufficient to establish probable cause for an arrest without warrant. Reasonable suspicion is a lower burden than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity "may be afoot." *Terry*, 392 U.S. at 30. *See also United States* v. *Hightower,* 376 Fed. Appx. 60, 62-63 (2d Cir. 2010) (summary order) (holding that the tip of a confidential informant who had previously provided reliable information established reasonable suspicion to make an investigative stop of a vehicle and, together with the agent's observations. probable cause to search the vehicle).

[6] Defendant claims, in his motion, that he was forcibly removed from the vehicle and placed in handcuffs. In the supporting affidavits, however, Defendant does not provide any facts to support this assertion.

*Houghton*, 526 U.S. 295, 304–05 (1999) (internal quotation marks omitted); *see also United States v. Patrick*, 899 F.2d 169, 172 (2d Cir. 1990) (holding that after drugs were discovered in defendant's backpack, agents had reasonable basis to believe that co-defendant "was not just a mere innocent traveling companion but was traveling and acting in concert" with defendant). Thus, it is reasonable to believe Palmer was not an innocent bystander in the narcotics transaction, and the officers had probable cause to arrest him following the discovery of the drugs in the vehicle he was driving. Therefore, the Court DENIES Palmer's motion to suppress oral statements made during the motor vehicle stop.

2. *Suppression of Post-Arrest Statements*

In order to admit a statement made by the Defendant obtained through interrogation, the Government must demonstrate that the Defendant was informed of and validly waived his *Miranda* rights under the Fifth Amendment. *Miranda v. Arizona,* 384 U.S. 436 (1966). *Miranda* requires that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." *Id*. at 444-45. "[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421 (1986).

First, though Defense counsel claims in its motion that the Defendant did not receive his *Miranda* warnings, the Defendant's affidavit clearly states that he "signed a declaration of rights," and the signed waiver is submitted to this Court as an attachment to the Government's motion. (*See* Defendant's Motion, Exhibit C, ¶18; Government's Motion, Exhibit A.) The Court will not therefore not consider this claim.

To the extent Defendant argues his waiver was involuntary, the issue requires a hearing,

which the Government acknowledges in its motion. Defendant's affidavit asserts that during custody, he was held by the neck and pushed against the wall by a police officer who threatened that he and his aunt would serve time in prison. (*See* Defendant's Motion, Exhibit C, ¶16.) Accordingly, because a factual dispute exists as to whether the Defendant voluntarily waived his *Miranda* rights, the Court holds that a hearing is required. The Government concedes that a hearing on this issue is necessary.

### B. Motion to Compel

Defendant also requests that the Court direct the Government to comply with discovery requests or, in the alternative, grant leave to Defendant to file a motion to compel. Defendant seeks significant information from the Government, including a Bill of Particulars, disclosure of Rule 404(b) material, and disclosure of various materials related to witnesses to be called at trial.

Defendant has failed to comply with Local Rule 16.1, which states:

> No motion addressed to a bill of particulars or any discovery matter shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement.

Defendant has not filed the requisite affidavit, nor has he provided any information suggesting attempts to resolve these disputes with the Government. *See United States v. Ojeikere*, 299 F. Supp. 2d 254, 260 (S.D.N.Y. 2004) ("the defendant's failure to file an affidavit as required by Local Criminal Rule 16.1 is a sufficient basis on which to deny his motion for a bill of particulars"). Because Defendant has not first sought to resolve these discovery disputes directly with the Government, the submission to this Court is premature, and the Court will not consider it.

9

## CONCLUSION

The Defendant's motion to suppress statements made during the motor vehicle stop and request for an order compelling additional discovery are DENIED. The Court additionally holds that the motion to suppress statements made after the arrest requires a hearing. The parties are directed to appear for a suppression hearing to be held on January 21, 2016 at 10:30 a.m. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 60.

Dated: October 23, 2015  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge